Billy BARGER, Appellant,

v.

STATE of Indiana, Appellee.

No. 683 S 223.

Supreme Court of Indiana.

Aug. 15, 1984.

Mark J. Dove, Rogers & Dove, North Vernon, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Billy Barger was found guilty by a jury in the Jennings Circuit Court on February 9, 1983, of the crimes of battery, a class B misdemeanor, confinement, a class D felony, and was further found to be a habitual offender. The trial court subsequently sentenced him to a term of six (6) months on the battery charge, four (4) years on the charge of confinement, and further enhanced that sentence by thirty (30) years on the finding that he was a habitual offender.

The issues raised by the defendant in this direct appeal are:

1) denial of his motion for change of venue from the county or in the alternative from the judge; and

2) denial of his motion for judgment on the evidence at the close of the habitual offender phase of the trial due to an insufficiency of the evidence.

On the morning of trial and before commencement of proceedings, the defendant filed a verified motion for change of venue from the county or in the alternative from the judge, based on alleged statements made by the trial judge on the preceding day and during dedication ceremonies of the Jennings Villa, a home for juvenile delinquents and wayward children. Apparently the judge made a speech at the dedication ceremony and made some reference to the defendant in his speech. We have no information other than statements of counsel that such a speech was made and, more particularly, we have no knowledge of the content of the speech. In arguing his motion before the trial judge, defense counsel stated that he had become aware that the judge had made a speech at the dedication ceremony on the previous day, and that it was his understanding that the speech was broadcast live over local radio station WOCH. Counsel stated he had tapes of the speech but because of the shortness of time did not have them ready for presentation. The judge indicated he was aware of what the defendant was talking about and the defendant's counsel then discussed very generally the speech made by the judge. Counsel stated the judge had made some remarks to the effect that had such a home been available to this defendant when he was young, the direction of his life might have been different and he might not have ended up being charged with crime. Counsel indicated there were some statements made about the defendant's family background and previous criminal activity. It was counsel's conclusion that because the judge had made a remark implying the defendant could be found to be a habitual criminal that the judge therefore had predetermined that the defendant would probably be found guilty of the charges before him. The prosecutor responded very briefly that the only interpretation he would give to the judge's remarks was that the judge showed empathy toward the defendant by implying that had a home such as the one they were dedicating been available to the defendant in his youth, the direction of his life might have been different. The defendant claimed before the court that because the community was contaminated with the radio broadcast and the broad newspaper coverage of the speech, it would be impossible to get an impartial jury from the community and that a change of venue from the county was necessary. In the alternative, the defendant claimed the judge had shown bias and prejudice to the defendant by his remarks that required a change of venue from the judge. The judge denied the motion for change of venue from the county and from the judge.

Defendant does not present the issue of his change of venue from the county and presents on appeal only the claim that the trial judge should have granted his change of venue from the judge because of his showing of bias and prejudice.

■ We have nothing in this record to support the defendant's claim that the trial judge had demonstrated some bias or prejudice against this defendant. There is no

reproduction or transcript of any radio broadcast or newspaper report of any statement made by the trial judge. There is only comment by counsel and the prosecutor that there was a speech made, but the context of such speech is not set out in any way whatsoever. We therefore have no grounds for assuming that the trial judge demonstrated bias or prejudice or even that he acted improperly in any way.

Defendant cites us to our opinion in *Dickens v. State*, (1973) 260 Ind. 284, 295 N.E.2d 613, wherein we stated: "We do believe that publicly made pretrial judicial statements regarding a pending case should arouse great suspicion in the minds of trial judges and should be closely scrutinized before a change of venue from the county is denied." In *Dickens*, however, a change of venue from the judge was granted and the issue raised on appeal was only the denial of the defendant's motion for change of venue from the county. We found in *Dickens* there was no demonstration by the defendant that the remarks made by the trial judge so contaminated the community that it was impossible to get an impartial jury to try the cause. Furthermore, the context of the judge's remarks in *Dickens* were set out and were, in fact, found to be so prejudicial that Justice Hunter, in writing for the Court, found them to be "reprehensible." There is no such showing here. In *Keys v. State*, (1979) 271 Ind. 52, 390 N.E.2d 148, a similar question was presented. There, the defendant moved for a change of venue during sentencing, alleging the judge had a close friendship with the victim's father, a local attorney. The trial judge found in *Keys* there was no basis whatever for that statement, as it was not true, and denied the motion. In *Keys*, we found, of course, that there is no provision in the law for a change of venue for the sentencing only. We further found, however, that the defendant's unsupported allegations did not meet his burden of showing a clear abuse of discretion in the denial of the motion. The same is true in this case. There is no supporting evidence of any action by the judge that shows a clear abuse of discretion in the denial of the motion for change of venue from the judge.

■ Defendant additionally cites two instances in which the trial court ruled against the defendant, and claims the rulings evidence the judge's bias against him. It appears that prior to the presentation of any evidence, the defendant moved for separation of witnesses. The State made only a general objection and the court denied the motion. Defendant gives us no argument as to the propriety of the court's action in denying the motion nor does he cite any authority in support of his contention. His only argument is that since this is a motion that is generally granted-by trial courts he deserved at least the courtesy of an explanation as to why it was denied here. Since neither the circumstances surrounding the motion and its denial, nor any argument or authority are given to us, we have no grounds to find that the court acted improperly on this issue.

The second instance cited by the defendant in which he alleges the trial judge showed prejudice and erred in his ruling, was in regard to the testimony of State Trooper Monty McKee. Trooper McKee testified as to the felony status of the defendant's prior convictions during the habitual criminal phase of the trial. On objection by the defendant that such testimony was hearsay, the trial court tended to agree, but did not strike the testimony nor admonish the jury to disregard it. Defendant now claims that the trial court's refusal to strike the testimony and admonish the jury not only constituted reversible error, but evidenced the judge's bias toward this defendant. We fail to see that it does either. This Court has previously provided in *Griffin v. State*, (1981) Ind., 415 N.E.2d 60:

"Whether an offense is a 'felony' is purely a question of legislative categorization; it is not a question of fact for the jury, but a matter of law predetermined by the legislature and applied by the judiciary. Ind.Code § 35–50–2–1 (Burns

1979 Repl.). *See Collins v. State*, (1981) Ind., 415 N.E.2d 46. The pertinent question of fact for the jury to determine in a habitual offender proceeding is whether the accused has two prior convictions. The question of whether those alleged convictions were for felonies is for the trial court to determine, based on relevant statutes, before evidence of the convictions is presented to the jury."

■ Since the responsibility for determining whether or not the prior convictions of the defendant were felonies was within the province of the court and not the jury, the source of Trooper McKee's knowledge that they were, in fact, felonies, was not significant. Apparently the trial court observed this and acted accordingly. Any error as to the admissibility of the evidence, therefore, with regard to its hearsay status was harmless and could not be the basis for reversal. Neither do we see the ruling evidencing bias and prejudice of the judge against this defendant.

## II

At the close of all the evidence in the habitual criminal phase of the trial, the defendant moved for judgment on the evidence which he denominated a directed verdict for the reason the State did not sufficiently identify him as the perpetrator of the two previous felonies put into evidence to support the habitual offender status.

■ Defendant's claim is based on the fact that there were discrepancies in the transcripts of the previous convictions as to the defendant's name, his birthdate and place of birth. One of the transcripts denominated him as "Billie Francis Barger," and the other as the name that appears in this cause, "Billy Barger." Defendant claims that the inconsistencies were so blatant that no one could determine beyond a reasonable doubt that he was the same person as those individuals described in the records. The State submits the documents do sufficiently prove identity of the defendant inasmuch as they contain information showing his age, height, weight, complexion, hair and eye color, and, in addition, contain photographs of the defendant showing both frontal and side views and further contain identifying features, i.e., tattoos placed on specific parts of the body. In *Bray v. State*, (1982) Ind., 443 N.E.2d 310, this Court found evidence in similar records of mug shots of appellant Bray including both frontal and side views as well as physical characteristics such as height, weight, hair color, eye color, and complexion, to be sufficient to sustain the jury in its conclusion that the appellant was the same Robert Bray who had accumulated the two prior felony convictions. To sustain its burden, the State must introduce certified copies of records showing the convictions and some supporting evidence which identifies the defendant as the same person previously twice convicted of unrelated felonies. *St. Mociers v. State*, (1984) Ind., 459 N.E.2d 26, *reh. denied; Morgan v. State*, (1982) Ind., 440 N.E.2d 1087; *Estep v. State*, (1972) 271 Ind. 525, 394 N.E.2d 111. Discrepancies in all of the evidence identifying the defendant goes to the weight of that evidence, and its credibility is within the province of the jury. There was ample supporting evidence here to justify the jury in finding beyond a reasonable doubt that this defendant was the same defendant who had committed the two previous unrelated felonies. The court, therefore, properly overruled Defendant's motion for a directed verdict.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.