**Gregory STRAUB, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 23S00–8707–CR–703.

Supreme Court of Indiana.

Feb. 27, 1991.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Gregory Karl Straub, was convicted by jury in Fountain Circuit Court of one count of Battery With A Deadly Weapon, a Class C felony, and found to be an Habitual Offender, for which he was sentenced to five (5) years, enhanced by thirty (30) years, for a total of thirty-five (35) years. He appeals directly to this Court and raises the following issues:

1. Whether the trial court erred in giving an instruction on battery as a lesser included offense of attempted murder;

2. Whether the trial court erred in giving an instruction on transferred intent;

3. Whether the conviction of battery with a deadly weapon was inconsistent with an acquittal of attempted murder;

4. Whether the evidence was sufficient to support the conviction of battery with a deadly weapon;

5. Whether the trial court erred in admitting certain exhibits relating to Straub's prior convictions during the habitual offender phase of trial;

6. Whether the evidence was sufficient to support the jury's finding that Straub was an habitual offender; and

7. Whether the trial court erred in refusing to inform the jury about the mandatory penalty enhancement provided by the habitual offender statute.

For the reasons stated below, we affirm the conviction of battery with a deadly weapon and reverse the habitual offender finding.

The facts most favorable to the verdict show that on March 13, 1985, Straub and his girlfriend, Leslie Reynolds, entered the Corner Pub in Attica, Indiana. While there, Straub confronted another patron, Harold Best, about remodeling work Best had promised to complete for Straub's mother. Straub threatened to strike Best; the men were soon separated by the bartender. A short time later, at Straub's request, Reynolds retrieved a gun from Straub's car. Then Straub and Reynolds left the tavern. While Straub stood in the parking lot outside the tavern, he fired several rounds from his gun into the air and at the tavern building. At least one bullet shattered one of the tavern's windows. Either the bullet or a piece of the window struck James Gates, another tavern patron, in the head.

Defendant was charged by information with two counts of attempted murder and with being an habitual offender. On Count I, which alleged the attempted murder of Harold Best, Straub was found not guilty. On Count II, Straub was found not guilty of the attempted murder of James Gates, but guilty of Battery With A Deadly Weapon. Defendant was also found to be an habitual offender.

### I. Lesser Included Offense

A. Straub asserts that the trial court erred by instructing the jury that battery was a lesser included offense of attempted murder. Citing *Johnson v. State* (1982), Ind., 435 N.E.2d 242, Straub maintains that both the language of the

statute and the charging document must necessarily include the lesser charge in the greater.

Such is not the case. The test for determining whether an instruction on a lesser included offense is proper is disjunctive, not conjunctive: either the language of the statute or the language in the charging document must necessarily include the lesser charge in the greater. As we stated in *Jones v. State*:

> We described the procedure for determining whether to instruct upon a lesser included offense in *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208. First, the trial court should examine the charging information and the elements of the two offenses to determine whether a conviction of the crime charged requires proof of all the essential elements of the lesser offense plus additional elements which distinguish the two offenses....
>
> The first step of the *Lawrence* test may be satisfied in either of two ways. An offense may be included if all the statutory elements of the lesser offense are part of the statutory definition of the greater offense. *See e.g., Brooks v. State* (1986), Ind., 497 N.E.2d 210 (elements of theft and conversion included in robbery). Alternatively, an offense may be included if the charging instrument reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime. *See e.g. Johnson v. State* (1984), Ind., 464 N.E.2d 1309 (elements of battery alleged in information charging attempted murder where element of substantial step toward murder alleged a touching); *Jones v. State* (1982), Ind., 438 N.E.2d 972 (criminal trespass not included in statutory burglary, but may be included in charging instrument as the manner in which the burglary was committed).

(1988), Ind., 519 N.E.2d 1233, 1234–35.

■ B. Defendant also assigns error to the instruction because the Information did not contain the essential elements of battery, and as a result, Straub was not adequately informed of the charges against

him. The Information alleged that Straub knowingly or intentionally attempted to kill "by shooting at and against the body of James Gates."

The elements of Battery With A Deadly Weapon are (1) knowingly or intentionally (2) touching (3) another person (4) in a rude, insolent or angry manner (5) by the use of a deadly weapon. Ind.Code § 35–42–2–1(3). In *Johnson v. State* (1984), Ind., 464 N.E.2d 1309, the Information charging the defendant with attempted murder alleged that he shot a round of live ammunition from a pistol he held in his hands at the victim and that the round of ammunition struck and wounded the victim. We held that the information was sufficient to put the defendant on notice that he was charged with battery because the elements clearly coincide.

As in *Johnson*, the Information in this case put Straub on notice that he was charged with the lesser included offense of battery because the statutory elements of battery "clearly coincide" with the allegations in the information. Therefore, we hold that the trial court properly instructed the jury on the lesser included offense of battery with a deadly weapon.

■ C. The jury was also instructed on the offense of battery with serious bodily injury. Ind.Code § 35–42–2–1(3). Defendant contends this was error because there was no evidence that the victim suffered such an injury.

Because the jury did not convict Straub of battery with serious bodily injury, we find that any error in reading this instruction was harmless.

## II. *Transferred Intent*

■ Straub next asserts the trial court erred in reading Instruction No. 9 to the jury. Instruction No. 9 provided:

> When one intends to kill a certain person with a deadly weapon, and by mistake or inadvertence kills another person with such weapon, in the eyes of the law, his intent is transferred from the person to whom it was directed to the person actually killed; and a person committing such act is deemed guilty of the crime he

originally intended to commit in like effect as if he had originally intended to kill the person he actually did kill through mistake or inadvertence.

Straub acknowledges that the instruction is an accurate statement of the law, and that, if the instruction on transferred intent had been limited to the attempted murder charge, it would have been proper. Instead, Straub claims that the instruction should have informed the jury that intent could be transferred only on the charge of attempted murder, and not the lesser included offense of battery, because the "specific intent" required for conviction of attempted murder cannot be "transferred" to support conviction for the "general intent" crime of battery. In support, Straub cites *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507, and *Humes v. State* (1981), Ind., 426 N.E.2d 379, as establishing that battery is not a specific intent crime. As this Court pointed out, however, in *Henderson v. State* (1989), Ind., 534 N.E.2d 1105:

> As used in this line of cases, the term "specific intent" was utilized to exclude application of the attempt statute to crimes requiring "recklessly" as the prerequisite culpability. The term was not used in its specific sense found in criminal law jurisprudence.
>
> The meaning of "specific intent" as used in the above attempt statute cases, is also distinguishable from the intended meaning in those cases which have commented that battery is not a specific intent crime. In *Norris [v. State* (1981), 275 Ind. 608, 419 N.E.2d 129] the defendant contended that he was so intoxicated that he could not form any specific intent to commit the offenses of murder, battery, resisting arrest, and possession of controlled substances. Perfunctorily noting that of all the offenses charged, only the attempted murder is a specific intent crime, the *Norris* court proceeded to find the evidence sufficient to find the defendant capable of forming the specific intent to kill. 419 N.E.2d at 132–133. Similarly, discussing a claim of insufficient evidence, *Matthews v. State* (1985), Ind. 476 N.E.2d 847, involved a defen-

dant's claim that his "specific intent" at the time he fired three shots "was simply to escape the danger which had confronted him, rather than to specifically batter Officer Dieter." Citing *Norris*, the court recited that battery is not a specific intent crime, and then proceeded to find the evidence sufficient to prove the defendant intended an unlawful touching. In both of those cases, the description of battery as not a specific intent crime was an unnecessary and inadvertent reference.

*Id.* at 1107–08.

The culpability required for conviction of murder is knowing or intentional. Ind. Code § 35–42–1–1(1). So, too, is the culpability required for battery. Ind.Code § 35–42–2–1(1). Because the degree of culpability required for either crime is the same, we hold that the intent to commit murder can be transferred in this context.

The jury was properly instructed about the mental elements required for attempted murder and for battery. Under these circumstances, the jury could have concluded that Straub acted with the intent to kill or with the intent to touch. It is entirely possible for the jury to have concluded that the requisite intent to commit murder was not present, but that Straub had the requisite intent to batter. As we stated in *Henderson v. State* (1976), 264 Ind. 334, 343 N.E.2d 776, "if the evidence shows the requisite mental state to exist in conjunction with the performance of a criminal act, then the law may punish the perpetrator, although the particular person injured was a mere bystander." Accordingly, we hold that it was proper to read Instruction No. 9 to the jury.

### III. *Inconsistent Verdicts*

■ Defendant claims the guilty verdict for battery with a deadly weapon in Count II of the Information was fatally inconsistent with the not guilty verdict for attempted murder in Count I. Defendant proposes that once he was found not guilty of attempted murder in Count I, all intent was extinguished so none remained to be transferred.

We find no merit in this argument. Straub ignores the possibility that, for example, the jury could have concluded that even if Straub did not shoot the gun with the intent to kill Best, the act of shooting the gun could have manifested an intent to batter someone in the tavern. Intent to commit battery may be inferred from the deliberate use of a deadly weapon in a manner calculated to strike another person. *Matthews v. State* (1985), Ind., 476 N.E.2d 847.

### IV. *Sufficiency of the Evidence—Battery*

■ Straub next claims that the evidence was insufficient to support the conviction for battery with a deadly weapon. The facts in this case are not in dispute. While in the Corner Pub, Straub had an argument with Best. At Straub's instructions, his girlfriend left the tavern, retrieved a gun, re-entered the tavern, and handed it to Straub. Both then left the Pub, as Straub said words to the effect that "someone would be sorry." Once in the parking lot, Straub said he wanted to "scare these people". He proceeded to discharge several rounds from the weapon in the direction of the tavern building. One of the bullets went through a window into the tavern. James Gates, another tavern patron, was struck either by the bullet or by glass from the window shattered by the bullet.

On appeal, this Court will examine the evidence most favorable to the State, plus all reasonable inferences. *Oatts v. State* (1982), Ind., 437 N.E.2d 463. This Court will not weigh the evidence or judge the credibility of the witnesses. *Douglas v. State* (1982), Ind., 441 N.E.2d 957. If there is evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Harden v. State* (1982), Ind., 441 N.E.2d 215.

Defendant argues that although his conduct would have supported a guilty verdict for criminal recklessness, Ind.Code § 35–42–2–2, the evidence fails to give rise to any inference that his behavior was intentional.

We do not agree. As we have already noted, intent to commit battery may be inferred from the deliberate use of a deadly weapon. *Matthews v. State* (1985), Ind., 476 N.E.2d 847.

Taking into account the manner in which Straub used the deadly weapon, and his statements and demeanor before and upon departure from the bar, we believe the jury could have properly concluded that Straub knowingly or intentionally battered Mr. Gates.

### V. *Admission of Exhibits*

Defendant next claims the following errors with regard to certain exhibits:

(A) The trial court erred by permitting a State's witness to testify about the contents of Exhibits 19 and 21 before those exhibits had been admitted into evidence;

(B) The State failed to lay a proper foundation connecting Exhibit 20 to Straub;

(C) Exhibits 19 and 21 were not properly certified and, therefore, were inadmissible hearsay.

■ A. During the habitual offender phase of the trial, the State introduced without objection Exhibit 22, which was a card bearing Straub's fingerprints. The State then called Kenneth O'Hare, an Indiana State Police Fingerprint Classifier, and asked him to compare the fingerprints on Exhibit 22 with the fingerprints on Exhibits 19 and 21. Straub objected because Exhibits 19 and 21 had not yet been admitted into evidence. Both Exhibits were later admitted.

Even if it were error to permit O'Hare to compare exhibits which were not yet in evidence, any such error was harmless since the exhibits were later admitted. *Beeler v. State* (1952), Ind., 230 Ind. 444, 104 N.E.2d 744.

■ B. Straub next argues that the State failed to lay a proper foundation connecting Straub to Exhibit 20.

Exhibit 20 consists of two pages of certified docket sheets maintained by the Cuyohoga County, Ohio, Sheriff's Department, which were presented at trial as journal entries of Straub's prior convictions. Only

the admission of page 1, which reflects a conviction for carrying a concealed weapon, is questioned by Straub. The name of the defendant on page 1 of Exhibit 20 is "Gregory Karl Staub". Straub argues that because his name is different from the name shown on page 1 of the Exhibit, the State has failed to prove that Straub was the person convicted of carrying a concealed weapon.

In *Coker v. State* we addressed this issue:

> Certified copies of judgments or committments containing the same or similar name as defendant's may be introduced to prove the commission of prior felonies. However, there must be other supporting evidence to identify defendant as being the same person named in the documents. *Estep v. State* (1979), 271 Ind. 525, 394 N.E.2d 111; *Smith v. State* (1962), 243 Ind. 74, 181 N.E.2d 520. Appellant implies the only manner in which he can be proven to be the person represented in the judgments and committments is to require each document to carry his photograph and fingerprints upon it.
>
> Such identifiers have been held sufficient to supply the necessary evidenciary support to directly connect the defendant to the documents in validating an habitual offender finding, *Rhyne [v. State* (1983), Ind., 446 N.E.2d 970], *supra; Norris v. State* (1979), 271 Ind. 568, 394 N.E.2d 144, but they are not the only forms in which such support may come. The question of defendant's prior convictions is for the jury's determination. *Estep, supra; Jones v. State* (1977), 267 Ind. 205, 369 N.E.2d 418. Identity may be proven by circumstantial evidence. *Estep, supra; Ellis v. State* (1969), 252 Ind. 472, 250 N.E.2d 364. If the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of felonies twice before, then sufficient connection has been shown.

(1983), Ind., 455 N.E.2d 319, 321. Defendant's identification can be independently established by fingerprint testimony.

*Mumford v. State* (1987), Ind., 514 N.E.2d 624.

Here, the name on page 1 of the docket sheet was similar to that of Straub. In addition, Sgt. Szudarek of the Cuyahoga County Sheriff's Department testified that Exhibit 19, a fingerprint card, corresponded to page 1 of Exhibit 20. Sgt. Szudarek further testified that the fingerprints in Exhibit 19 were the same as Straub's fingerprints. We conclude that there was sufficient evidence for the jury to find that Straub was the same person who was convicted of carrying a concealed weapon.

■ C. During the habitual offender phase of the trial, Exhibits 19 and 21 were admitted into evidence over Straub's objection that the exhibits were not properly certified, and were inadmissible hearsay because the State failed to show an adequate foundation for the business record exception to the hearsay rule.

Sgt. Szudarek testified that he was Head of Scientific Identification Unit of Records Section and that he supervised all activities with respect to fingerprints and criminal records. He identified Exhibits 19 and 21 as copies of the fingerprint cards maintained in his offices in the normal course of business.

In *Lyons v. State* (1987), Ind., 506 N.E.2d 813, we considered the admissibility of arrest report records maintained by a law enforcement agency under the business records exception to the hearsay rule, and stated:

> An official record, such as the arrest reports here, may be attested to by the person who has custody of those records, regardless of whether that person has firsthand knowledge of the underlying transaction. *McBrady v. State* (1984), Ind., 459 N.E.2d 719, 723. The witness is required to demonstrate only that the document is a part of records kept in the routine course of business and placed in the record by an authorized person who had personal knowledge of the underlying transaction. That was done by Officer Wefler here. It was not necessary, as appellant contends, that the entering

witness be able to specifically testify that he knew the person who entered the information on the documents had personal knowledge. Records contained in the usual course of business are presumed to have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry, unless there is a showing to the contrary.

506 N.E.2d at 816–17. Because Sgt. Szudarek was the custodian of these records, they did not need to meet certification requirements set forth in Ind.Code § 34–1–18–7 or with Trial Rule 44(A)(1).

We believe the evidence was sufficient to establish an adequate foundation for the admission of Exhibits 19 and 21 under the business records exception to the hearsay rule.

### VI. *Sufficiency of the Evidence—Habitual Offender*

■ Plaintiff next claims that there was insufficient evidence to support the verdict that Straub was an habitual offender because there was no evidence to establish that Straub had been convicted of carrying a concealed weapon and, even if the evidence was sufficient to establish a conviction, there was no evidence that the conviction was for a felony.

In Section V, we concluded that the evidence was sufficient to connect Straub with the conviction memorialized in Exhibit 20. We now address the question of whether the evidence was sufficient to establish that Straub's conviction was for a felony.

Our review of the record reveals the following facts. Page 1 of Exhibit 20 is the document relating to the conviction. It shows that Straub was convicted in Cuyahoga County, Ohio, of carrying a concealed weapon in 1974. According to the document, Straub was to:

be imprisoned and confined in the Ohio State Reformatory, Mansfield, Ohio, per R.C. 2923.01 for an indeterminate period, according to law, and that he pay the costs of the prosecution for which execution is awarded. Imposition of sentence suspended and defendant placed on pro-

bation for one year under the supervision of the Cuyahoga County Probation Department.

The document is silent as to the potential penalty for conviction of this crime. On direct examination, over the objection of Straub, Sgt. Szudarek testified that "in the State of Ohio this crime carries a penalty of one to three years." On cross examination, Sgt. Szudarek testified that at the time of the conviction, carrying a concealed weapon could have been treated as a misdemeanor in Ohio. He did not know whether, in this case, the charge had been treated as a misdemeanor or a felony. This is the only evidence at trial bearing upon the determination of whether the conviction was for a felony.

For purposes of the Habitual Offender statute, a felony is any crime for which the sentence could be more than one year. Ind.Code § 35–50–2–1. The issue is whether the evidence was sufficient to prove that the conviction was for a felony.

This Court has previously decided that parol evidence, alone, is insufficient to prove all the elements of the Habitual Offender portion of the State's case absent some showing that records are unavailable. *Davis v. State* (1986), Ind., 493 N.E.2d 167. In *Morgan v. State,* we stated:

To countenance proof of such an important matter as a prior conviction in a criminal trial upon parol evidence alone from witnesses who have observed the judicial proceedings, resulting in it, is counter to our entire perspective on this subject. We, therefore, hold that parol evidence standing alone is insufficient evidence of the fact of prior convictions in the absence of a showing of the unavailability of the proper certified records. Here, no such records were introduced, and there was no indication that the State was unable to produce them. The additional 30–year term imposed under Ind.Code § 35–50–2–8 cannot stand on the evidence submitted, and defendant's conviction on that charge must be reversed.

(1982), Ind., 440 N.E.2d 1087, 1091.

In this case, parol evidence was offered to prove only one element of the habitual

offender charge, that is, whether the conviction memorialized in Exhibit 20 was for a felony. Without deciding whether parol evidence, alone, may ever be sufficient to prove this element, we conclude that in this case it was not.

There was no showing that the police officer was qualified to offer testimony on potential sentences for particular crimes or to interpret the Ohio statutes providing for those sentences. The police officer did not have personal knowledge of the facts surrounding Straub's conviction or sentencing, and did not know whether the charge against Straub had been treated as a felony or a misdemeanor, thus calling into question whether, in fact, Straub had faced a sentence which could have been more than one year. Further, the State made no showing that documentary evidence which might have clarified this issue was unavailable and did not ask the trial court to take judicial notice of Ohio statutes.[1]

In view of our ruling, then, the determination that Straub is an habitual offender must be set aside and the sentence imposed thereon vacated. Because our decision involves a reversal based upon insufficiency of the evidence, discharge of Straub on the habitual offender charge is required by the Double Jeopardy Clause of the Fifth Amendment. *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1.

VII. *Failure to Inform Jury Of Habitual Offender Sentence*

In light of our conclusion that the Habitual offender finding be vacated and Straub discharged, we do not address Straub's final argument that the jury should be informed about the mandatory penalty enhancement provided for in the Habitual Offender Statute.

CONCLUSION

The conviction of Battery With A Deadly Weapon is affirmed. The finding that Straub is an habitual offender is hereby

vacated and remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.

---

1. After our own review of pertinent Ohio statutes, we note that the crime of carrying a concealed weapon is treated as a misdemeanor, unless there are certain aggravating features, in which case the crime can be a felony. The record contains no evidence relating to how the charge was treated in Straub's particular case.